IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

LORRAINE G. BROWN, Individually,    )
    )
    Plaintiff,    ) vs.
    )    Cause No. _____
    )
UNITED STATES OF AMERICA,    )
    )
    Defendants.    )

## **COMPLAINT**

COMES NOW Plaintiff Lorraine G. Brown by and through undersigned counsel, and for her Complaint against Defendant United States of America states as follows:

JURISDICTION

1. Jurisdiction is proper under 28 U.S.C. §1346(b). This claim is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, et seq.

2. An administrative claim pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, et seq., was timely made on behalf of the veteran and served on the Edward Hines, Jr. VA Hospital on May 1, 2023, (a copy of the administrative claim Form 95 dated April 10, 2023, is attached as Exhibit 1). The Department of Justice acknowledged receipt of the Administrative Claim on May 01, 2023, through correspondence dated June 23, 2023 (copy of said correspondence is attached as Exhibit 2). Plaintiff's claim is still pending.

3. Plaintiff has not received a denial regarding the administrative claim filed and the mandatory six-months administrative investigation period has tolled. Therefore, this suit is subsequently filed timely under both the FTCA and Illinois law.

4. Although the Veterans Administration has received and acknowledged the claims herein since May 1, 2023, no notice has ever been provided pursuant to 38 C.F.R. Section

1

515(e) or otherwise pursuant to the requirements of the Brian Tally VA Employment Transparency Act, informing Plaintiff that any of the providers herein noted were not employees or deemed as such by the Veterans Administration.

<u>VENUE</u>

5. Venue is proper in this District pursuant to 28 U.S.C. §1402 and 28 U.S.C. §1346 as Plaintiff is and was at all relevant times a resident and citizen of this Judicial District and the tortious acts or omissions complained of occurred within this Judicial District.

<u>ALLEGATIONS COMMON TO ALL COUNTS</u>

6. At all times relevant hereto, Plaintiff Lorraine G. Brown was and is an adult resident and citizen of the State of Illinois, residing in Bolingbrook, Illinois 60440, and is an honorably discharged Veteran of the United States Army, having served from February 22, 1978 through September 30, 1992.

7. At all times relevant hereto, The Edward J. Hines Jr. Veterans Affairs Medical Center at Hines, Illinois, a/k/a "Hines VA Medical Center", "Hines VAMC", "Hines VA Hospital" were and are a part of the Department of Veterans Affairs, an agency of the U.S. government and did own, control, manage or operate a medical center and hospital at 5000 S. 5th Ave., Hines, Illinois 60141-3030, and elsewhere in Illinois, and did employ physicians, nurses, and other licensed medical professionals to practice medicine and/or their health-care related professions, and did hold itself out to the public and to Plaintiff as providing qualified medical, surgical, and hospital services.

8. At all times relevant hereto, Edward J. Hines Jr. Veterans Affairs Medical Center was a part of the federal government and was a "Federal Agency" as defined in 28 U.S.C. §2671,

2

et seq., and said Hospital and each individual herein named was acting within the scope of its agency or employment by the United States Department of Veterans Affairs.

9. At all times relevant hereto Plaintiff had presented at and was accepted and was being treated as a patient at Hines VAMC and a healthcare-provider-patient relationship existed between the hospital and individual employees or agents of Hines VAMC and Plaintiff, and Defendant and each provider owed to Lorraine G. Brown the duty to provide hospital, nursing, medical and/or surgical care, assessment and evaluation with the skill and care of a reasonable physician or other health-care professional in the same or similar circumstances, and Hines VAMC had the duty to provide such qualified and competent health care professionals and care.

10. At all relevant times, Defendant UNITED STATES OF AMERICA acted by and through Hines VAMC and its actual and apparent agents and employees, including its physicians, surgeons, administrators, nurses, technicians, social workers, aides, interns, counselors, or trainees and including, but not limited to, each of the individuals named herein, and did hold each of said care providers out as its employee or agent, both by express statement and/or by action and uniform or insignia, and Plaintiff did rely upon such representations.

FACTUAL ALLEGATIONS

11. On or about August 4, 2022, Plaintiff Lorraine G. Brown presented to the Edward J. Hines Jr. Veterans Affairs Medical Center for a previously scheduled surgical procedure, a C4 corpectomy with anterior cervical plating, for the treatment of cervical spondylotic myelopathy with compressive myelomalacia.

12. Prior to surgery, Plaintiff had been living independently, working full-time as an IT Specialist at Hines VA since 2007, and performing her own activities of daily living without significant assistance.

13. At all times relevant hereto, Defendant was aware that Plaintiff was an honorably discharged veteran of the United States Army, having served from February 22, 1978 through September 30, 1992, with a 70% service-connected disability rating.

14. On August 4, 2022, Plaintiff underwent the planned C4 corpectomy procedure, performed by Dr. Joseph C. Serrone and Dr. Nathan Pecoraro in Operating Room OR7-X at Hines VAMC, with anesthesia provided by Dr. John Murdoch and certified registered nurse anesthetists.

15. The surgical procedure began at approximately 12:59 p.m. and concluded at approximately 3:54 p.m.

16. Surgeons Pecoraro, M.D. and/or Murdoch, M.D., and/or each of them, chose an anterior approach to this procedure, despite pre-surgical studies which contraindicated that approach, given Plaintiff's particular anatomy.

17. During the operative procedure, while removing the superior and right portion of the C4 vertebral body, the surgical team encountered brisk arterial bleeding consistent with injury to the right vertebral artery.

18. The intraoperative injury to the right vertebral artery resulted in significant hemorrhage requiring the transfusion of two units of packed red blood cells, with an estimated blood loss of approximately 900 milliliters.

19. In response to the vertebral artery injury and bleeding, Defendant's surgeon(s) made an intraoperative decision to place four sterile cottonoid patties against the vertebral artery for tamponade and to intentionally leave these patties in place within the C4 corpectomy space.

20. Defendant's surgeon(s) then, after initial trials, placed a 20 millimeter corpectomy cage and a 24 millimeter anterior cervical plate with screws over the retained cottonoid patties to bolster them against the vertebral artery.

21. The nursing intraoperative report documented "Possible Item Retention: YES" and "Sponge Final Count Correct: NO, SEE NURSING CARE COMMENTS."

22. Due to the intraoperative complications, Plaintiff sustained an estimated blood loss of approximately 900 to 1,000 milliliters and required transfusion of two units of packed red blood cells. Plaintiff's $CO_2$ levels increased during the hemorrhage and she required vasopressor support, though she was not noted to have become overtly hypotensive.

23. Following the surgery, Plaintiff was transferred to the Surgical Intensive Care Unit where she remained intubated and mechanically ventilated on volume-controlled ventilation with settings of SIMV 12 breaths per minute, tidal volume 500 mL, pressure support 5, PEEP 5, and $FiO_2$ between 40% and 50%. Plaintff was not able to be extubated until August 5, 2022.

24. On the evening of August 6, 2022, Plaintiff developed new neurological symptoms including diplopia (double vision) and severe dizziness described as "room spinning," prompting immediate evaluation by the neurosurgery team and urgent neuroimaging.

25. Defendant initially failed to recognize the double vision and dizziness as signs of a posterior circulation stroke.

26. Despite the presentation of classic stroke symptoms, imaging studies were not ordered until more than two and one-half hours after Plaintiff first reported symptoms.

27. A CT angiogram of the head and neck was performed at approximately 10:50 a.m., and an MRI of the brain was performed at approximately 12:02 p.m., approximately four hours after Plaintiff's symptoms began on August 7, 2022.

28. The imaging studies confirmed a large acute infarction involving the right cerebellar hemisphere in the right posterior inferior cerebellar artery territory, with associated edema and effacement of the fourth ventricle.

29. The radiologist communicated the critical findings of the stroke to the attending neurosurgeon, Dr. Serrone, by telephone at approximately 1:15 p.m., more than five hours after Plaintiff's stroke symptoms had begun.

30. The imaging studies also revealed the development of a vertebral artery to vertebral vein fistula at the level of C4, in the region of the surgical site, as a consequence of the intraoperative vertebral artery injury.

31. Following the diagnosis of the cerebellar stroke, Plaintiff experienced persistent diplopia, vertigo, and neurological impairment throughout her continued hospitalization.

32. On August 8, 2022, a swallow study revealed severe oropharyngeal dysphagia with clinical signs of aspiration, and Plaintiff was made NPO and required placement of a nasogastric feeding tube.

33. Plaintiff required tube feeding through a Dobhoff tube from August 9, 2022 through August 16, 2022, when she was able to advance to a pureed diet.

34. On August 16, 2022, due to significant functional impairments resulting from the stroke, Plaintiff was transferred to the acute inpatient rehabilitation unit at Hines VAMC. Plaintiff's Functional Independence Measure (FIM) total score was 88 out of 126, with a motor subtotal of 63 and cognitive subtotal of 25, indicating significant functional impairment and dependence requiring assistance with basic activities of daily living including grooming, bathing, dressing, toileting, transfers, and ambulation.

35. Plaintiff remained in acute inpatient rehabilitation from August 16, 2022 through August 23, 2022, requiring intensive physical therapy, occupational therapy, and speech therapy.

36. At the time of discharge from inpatient rehabilitation, Plaintiff required a rollator walker for ambulation, could only ambulate approximately 400 feet with close supervision, and required assistance with activities of daily living including bathing and toileting.

37. On September 9, 2022, Plaintiff presented to the Emergency Department following a mechanical fall while reaching for an object at home, resulting in readmission from September 9 through September 11, 2022, for observation and management of severe pruritus at the neck incision site, acute kidney injury, and monitoring for potential cardiac issues.

38. On September 21, 2022, Plaintiff returned to the Emergency Department with complaints of moderate neck pain radiating into the right shoulder and progressive right shoulder weakness developing over the prior four days, and imaging revealed no acute changes but physical examination documented new right deltoid weakness. On September 28, 2022, approximately seven weeks after surgery, Plaintiff was diagnosed with a right C5 palsy.

39. On October 19, 2022, a diagnostic angiogram confirmed the presence of a vertebral artery to vertebral vein fistula at the C4 level in the region of the prior surgery, with extensive early venous filling.

40. On November 3, 2022, Plaintiff underwent right vertebral artery embolization under general anesthesia in the interventional radiology suite to treat the vertebro-vertebral fistula, with placement of multiple coils resulting in total occlusion of the right vertebral artery.

41. Following the embolization procedure, Plaintiff was admitted to the hospital from November 3 through November 6, 2022, for post-procedure monitoring including heparin

anticoagulation which was subsequently discontinued, and she was discharged home in stable condition with instructions for outpatient neurosurgery follow-up.

42.     Due to persistent dysphagia, Plaintiff required continued dietary restrictions including soft solids with thin liquids, use of compensatory swallowing strategies such as double swallows and liquid washes, and ongoing speech-language pathology treatment including lingual strengthening exercises using an IOPI device through February 2023.

43.     Rehabilitation efforts continued and on February 6, 2023, Plaintiff underwent neuropsychological evaluation which diagnosed a neurocognitive disorder with deficits in attention, working memory, and planning and organization abilities, as well as moderate depression with a PHQ-9 score of 12.with vascular etiology, attributable to the right cerebellar stroke.

44.     On August 31, 2023, more than one year after her surgery, Plaintiff was evaluated in outpatient physical therapy for persistent right shoulder pain and weakness, documenting right C5 palsy with right shoulder flexion limited to 95 degrees compared to 175 degrees on the left, abduction limited to 70 degrees compared to 177 degrees on the left, and manual muscle testing showing grossly 3-/5 strength on the right compared to 4/5 on the left.

40.     Plaintiff continued outpatient physical therapy through November 2023 for ongoing right deltoid weakness and right C5 palsy symptoms, requiring manual therapy, therapeutic exercises, and pain modalities, with documented persistent functional limitations in right upper extremity use and activities of daily living.

44.     On February 6, 2023, Plaintiff underwent comprehensive neuropsychological evaluation which revealed mild neurocognitive disorder with variable deficits in attention,

working memory, processing speed, and planning and organization, with the neuropsychologist opining that etiology was suggestive of vascular contribution related to her cerebellar stroke.

45. Prior to the August 4, 2022 surgery, Plaintiff had no history of stroke, cerebellar injury, cognitive impairment, dysphagia requiring tube feeding, or the significant physical and functional limitations she now experiences. Plaintiff experienced multiple falls following her discharge from rehabilitation, including documented falls requiring emergency department evaluation, and continued to experience chronic pain, functional limitations, and dependence on assistive devices for ambulation more than one year after her August 4, 2022 surgery

46. During the course and scope of Plaintiff's treatment at the Edward J. Hines Jr. Veterans Affairs Medical Center, Defendant, by and through its employees or agents, committed one or more of the following negligent acts or omissions:

a. Defendant's surgeons failed to properly conduct or document adequate pre-operative risk assessment regarding the known risks of vertebral artery injury during anterior cervical corpectomy procedures;

b. Defendant's surgeons failed to understand or adequately appreciate the complications presented by the congenital position of the right vertebral artery aside or within Plaintiffs' C4 vertebrae;

c. Defendant failed to properly consider the fusing of Plaintiff's C5-C6 vertebral levels and their narrower configuration which would impact both the choice of cage size, placement of the cervical corpectomy cage, and the approach;

d. Defendant failed to use a posterior approach given the likelihood of injury to the vertebral artery given its location and involvement with the corpus of the C4 vertebrae;

9

e. Defendant failed to perform the corpectomy procedure with the skill and care of a reasonable neurosurgeon in the same or similar circumstances;

f. Defendant injured the C5 vertebral nerve(s) resulting in a nerve palsy, when protection of the same is a goal of this surgery;

g. Defendant injured and failed to adequately and/or properly treat the vertebral artery injury, leading to a fistula between blood vessels;

h. Defendant failed to timely or adequately address and treat the vertebral artery injury causing excessive loss of blood and requiring excessive amounts of transfused blood or blood products and/or kept a level of anticoagulation that caused additional bleeds;

i. Defendant used an inappropriate or too-large diameter cage to replace the C4 vertebrae, or caused additional injury inserting it;

j. Defendant failed to otherwise properly identify, visualize, protect, or avoid the right vertebral artery during removal of the C4 vertebral body;

k. Defendant failed to properly control hemorrhage from the vertebral artery injury without leaving foreign material in the surgical site;

l. Defendant failed to timely recognize the development of a vertebral artery to vertebral vein (vertebrovertebral) fistula following the intraoperative vascular injury;

m. Defendant failed to provide adequate post-operative monitoring and surveillance for complications of the vertebral artery injury;

n.      Defendant failed to maintain hourly neurological assessments and stroke protocol when clinically indicated, reducing neuro checks from every one hour to every two hours on August 6, 2022, prior to Plaintiff's stroke;

o.      Defendant failed to timely communicate critical imaging findings of acute cerebellar infarction to the attending physician, delaying notification for more than five hours after symptom onset;

p.      Defendant failed to recognize and timely diagnose and treat the developing cerebellar infarct, despite Plaintiff developing new neurological symptoms including diplopia and severe dizziness on August 7, 2022

q.      Defendant failed to properly respond to or act upon abnormal post-operative imaging findings, including endotracheal tube malposition and prevertebral soft tissue swelling;

r.      Defendant failed to ensure effective communication between the surgical team, ICU providers, neurology consultants, and rehabilitation staff regarding the full scope of Plaintiff's complications including the vertebral artery injury, retained foreign bodies, cerebellar stroke, and developing vertebro-vertebral fistula;

s.      Defendant failed to develop and implement a comprehensive interdisciplinary care plan adequately addressing Plaintiff's multiple serious complications including vascular injury, cerebellar infarction, severe dysphagia, right C5 palsy, and functional decline;

47. As a direct and proximate result of one or more of the negligent acts or omissions as stated above, Plaintiff was caused to suffer significant physical and mental injuries or aggravations of prior conditions, some or all of which are permanent or progressive, including without limitation: a severe an acute loss of significant quantities of blood, injury to her right vertebral artery, a large acute infarction involving the right cerebellar hemisphere in the right posterior inferior cerebellar artery territory, with associated edema and mass effect on the fourth ventricle; was caused to suffer right C5 palsy with significant and persistent weakness of the right upper extremity, including inability to abduct the right shoulder and loss of deltoid function; was caused to suffer severe oropharyngeal dysphagia with aspiration requiring prolonged NPO status and nasogastric tube feeding; was caused to suffer significant gait and balance impairment with persistent vertigo, dizziness, and high risk for falls requiring use of assistive devices including a rollator walker and cane; was caused to suffer chronic kidney disease stage 3A with elevated creatinine and reduced renal function; was caused to suffer anemia requiring blood transfusion; and was caused to suffer great physical pain, discomfort, and mental anguish both during the acute events and on an ongoing basis.

47. As a further direct and proximate result of one or more of the negligent acts or omissions of Defendant, Plaintiff was caused to suffer neurocognitive disorder with vascular etiology, including significant deficits in attention, working memory, planning, and organization; was caused to suffer persistent forgetfulness, word-finding difficulties, and problems with concentration and memory; was caused to suffer adjustment disorder with depressed mood, moderate depression with a PHQ-9 score of 12, anxiety, grief, and sleep disturbance; was caused to suffer the loss of independence and dignity, requiring assistance with activities of daily living including bathing and toileting, and requiring durable medical equipment including a tub transfer

bench and arm sling; was caused to suffer the loss of enjoyment of life and the ability to engage in activities she previously enjoyed; and was caused to endure acute inpatient rehabilitation hospitalization and ongoing extensive therapy and treatment.

48.     As a further direct and proximate result of one or more of the negligent acts or omissions of Defendant and of the resulting injuries, Plaintiff was forced to retire from her position as an IT Specialist at Hines VA in September 2022, losing her income and ability to work and to earn a livelihood; was caused to incur and will continue to incur significant medical expenses for ongoing specialist consultations including neurosurgery, neurology, physical medicine and rehabilitation, neuropsychology, speech-language pathology, physical therapy, and mental health services, as well as costs for durable medical equipment and home health services. The injuries and damages suffered by Plaintiff, including the mild neurocognitive disorder, right upper extremity weakness and C5 palsy, gait and balance impairment, chronic kidney disease, and psychological disorders, are permanent in nature and will continue into the future, requiring ongoing medical care, treatment, and rehabilitation, and causing continuing loss of income, enjoyment of life, and independence, and all such damages are continuing and will continue into the future, all in amounts to be determined.

WHEREFORE, Plaintiff Lorraine G. Brown prays this Court enter judgment in her favor and against Defendant, UNITED STATES OF AMERICA, and award compensatory damages in an amount fair, reasonable, and sufficient to compensate Plaintiff for all losses and damages, both economic and non-economic, in excess of the jurisdictional minimum of this Court, for costs of suit and litigation expenses, for pre-judgment and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper.

THE LAW OFFICES OF DAVID N. DAMICK

/s/ David Damick
David N. Damick, #6208797
One Metropolitan Square, Suite 2420B
211 North Broadway
St. Louis, Missouri 63102-2733
TEL: (314) 231-0570
FAX: (314) 621-8639
dnd@damicklaw.com
Attorneys for Plaintiff

14